IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



SETH KONECKY and JENNIFER
KONECKY, husband and wife,
FLATHEAD COUNTY DIST., INC., a
Montana Corporation, individually,
and on behalf of all others similarly
situated,

Plaintiffs,

vs.

ALLSTATE FIRE & CASUALTY
INSURANCE COMPANY, *et al.*,

Defendants.

CV 17–10–M–DWM

OPINION and
ORDER

Defendants Allstate Fire & Casualty Insurance Company, Allstate

Indemnity Company, Allstate Property & Casualty Insurance Company, and

Allstate Insurance Company (collectively "Allstate") seek to dismiss Plaintiffs

Seth and Jennifer Konecky and Flathead Valley District, Incorporated's

(collectively "Plaintiffs") First Amended Complaint. (Doc. 37.) Plaintiffs request

contractual underinsured coverage (Count One) and allege statutory insurance bad

faith (Count Two), breach of the insurance policy contract and the implied

covenant of good faith and fair dealing (Count Three), constructive fraud (Count Four), conversion (Count Six),[1] civil conspiracy (Count Seven), and aiding and abetting (Count Eight). (Doc. 34 at ¶¶ 33-63.) Plaintiffs also bring class-action claims not at issue here. Allstate's motion to dismiss is denied.

Plaintiffs sufficiently allege that Allstate violated Montana's "made whole" rule by subrogating for property damages when Plaintiffs had unrecovered losses, costs, and attorney fees within that category of coverage. Next, Plaintiffs' claim that Allstate violated the implied covenant of good faith and fair dealing is a contract claim, and thus not barred by Montana's Unfair Trade Practices Act. Plaintiffs' constructive fraud claim is pled with sufficient particularity because it lays out the who, what, when, where, and how of the alleged constructive fraud, and, because Plaintiffs' tort claims survive, so do Plaintiffs' civil conspiracy and aiding and abetting claims. Finally, Plaintiffs' specific claim for contractual underinsured coverage is sufficient to maintain their breach of contract claim.

## FACTUAL BACKGROUND

The facts outlined below are taken from the First Amended Complaint, (Doc. 34), and accepted as true, *Harris v. Rand,* 682 F.3d 846, 850 (9th Cir. 2012).

---

[1] Plaintiffs appear to have inadvertently skipped from Count Four to Count Six—there is no Count Five.

Plaintiff Seth Konecky ("Seth") was involved in an auto accident caused by Hailey and Nathan Tolson in Flathead County on December 25, 2014. (*Id.* at ¶¶ 2, 24.) Plaintiffs were insured by Allstate and the Tolsons were insured through AAA. (*Id.* at ¶¶ 1, 4.) Plaintiffs' automobile insurance policy included liability, medical, uninsured motorist, underinsured motorist, comprehensive, and collision coverages. (Doc. 39-2 at 19-20.)

As a result of the Tolson's conduct, Seth suffered bodily injury and Plaintiffs suffered loss of income and loss of earning capacity, and incurred medical expenses and property damage losses including repair costs, diminution, replacement vehicle and rental charges, and loss of use. (Doc. 34 at ¶ 24.) Plaintiffs subsequently claimed and received a payout from their collision coverage with Allstate in the amount of $6,426.77, the cost of repair minus the $500.00 deductible. (*Id.* at ¶ 25.) Plaintiffs began pursuing further property damages from the Tolsons and their insurer, AAA, incurring $2,717.86 of attorney fees in the process. (*Id.* at ¶¶ 24-25.) Allstate never investigated whether Plaintiffs had been made whole. (*Id.* at ¶ 30.) Then, before Plaintiffs were made whole for their bodily injury damages or their property damages, Allstate subrogated with AAA for the property damages which Allstate paid Plaintiffs. (*Id.* at ¶ 29.)

## PROCEDURAL HISTORY

Plaintiffs subsequently filed suit in the Eleventh Judicial District Court of Montana on October 21, 2016. (Doc. 6.) Allstate removed the action to this Court on January 27, 2017, (Doc. 1), and subsequently filed a motion to dismiss. (Doc. 20.) Plaintiffs filed their First Amended Complaint on September 25, 2017, mooting that motion. (Doc. 34.) Allstate filed a second motion to dismiss on October 16, 2017. (Doc. 37.)

## STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a] complaint must include more than just conclusory allegations to survive a Rule 12(b)(6) motion to dismiss." *Harris*, 682 F.3d at 850 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). "Trial courts must accept a complaint's factual allegations as true, but those allegations must plausibly suggest 'the pleader is entitled to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

## ANALYSIS

Allstate first argues that Plaintiffs' made whole claims are, as a whole, legally deficient. (Doc. 38 at 10.) Allstate also specifically challenges Plaintiffs'

Plaintiffs' claims for violation of the covenant of good faith and fair dealing (Count Three), constructive fraud (Count Four), conspiracy (Count Seven), aiding and abetting (Count Eight) and breach of contract (Count One). These challenges are addressed in turn.

## I.    Subrogation and the "Made Whole" Rule

Allstate insists subrogation was appropriate because it was not required to cover Plaintiffs' unrecovered damages under the policy. Plaintiffs argue Allstate violated the "made whole" rule. Plaintiffs have the better argument.

Subrogation is "the 'substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor.'" *Van Orden v. United Servs. Auto. Ass'n*, 318 P.3d 1042, 1045 (Mont. 2014) (quoting *Black's Law Dict.* 1563–64 (Bryan A. Garner ed., 9th ed., West 2009).) "The doctrine require[s] that an insured be 'made whole' before an insurer c[an] assert its subrogation rights, which mean[s] that, not only must the insured recover all of her losses but also all costs of recovery as well, such as attorney fees and costs of litigation." *Swanson v. Hartford Ins. Co. of the Midwest*, 46 P.3d 584, 586–87 (Mont. 2002). The policy behind Montana's "made whole" rule is that "[w]hen the sum recovered by the Insured from the Tort-feasor is less than the total loss and thus either the Insured

-5-

or the Insurer must to some extent go unpaid, *the loss should be borne by the insurer for that is a risk the insured has paid it to assume.*" *Id.* at 588 (quoting *Skauge v. Mtn. States Tel. & Tel. Co.*, 565 P.2d 628, 632 (Mont. 1977)) (emphasis in original). Where "damages are discrete, readily-ascertainable, and completely covered under a separate policy or portion of the policy for which a separate premium has been paid, subrogation may proceed as to that element of loss only." *Van Orden,* 318 P.3d at 1048.

Allstate first argues subrogation is proper because it paid Plaintiffs the amount owed under the policy, regardless of whether Plaintiffs have unrecovered attorney fees or other costs. This argument does not square with Montana's "made whole" rule: "an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of any contract language providing to the contrary." *Swanson*, 436 P.3d at 589. Whether Allstate is contractually bound under the policy to pay Plaintiffs' deductible, rental expenses, or attorney fees incurred while pursuing damages is irrelevant to the question of whether the "made whole" rule applies.

Allstate next relies on *Van Orden* to argue the "made whole" rule does *not* require insurers to make an insured whole for elements not covered under collision

protection, such as bodily injury and attorneys' fees. Van Orden sustained both bodily injury and property loss damages in an automobile accident. *Van Orden*, 318 P.3d at 1044. He carried collision coverage with his insurer which covered the entirety of his property damages, and he sustained *no* out-of-pocket losses from his property damage. *Id.* Van Orden sued after his insurer subrogated for the property damages with the tortfeasor's insurer before Van Orden was made whole for his bodily injury damages. *Id.* In response to a certified question from the District of Montana, the Montana Supreme Court held that when "damages are discrete, readily-ascertainable, and completely covered under a separate policy or portion of the policy for which a separate premium has been paid, subrogation may proceed as to that element of loss only." *Id.* at 1048. Critically, under the Monana Supreme Court's analysis, the insured was "fully compensated by payment from his insurer for the property damage loss—including all costs associated with the property damage loss—and made whole as to the property damage loss" he incurred. *Id.* at 1043.

In contrast, Plaintiffs here allege at least $15,017.72 in property loss damages, including costs of repair, diminution, replacement vehicle and rental charges, loss of use, the deductible, and attorney fees incurred in securing

recovery from the tortfeasors. (Doc. 34 at ¶¶ 24–25.)[2] Allstate paid Plaintiffs $6,426.77, the cost of repair minus the $500 deductible. (*Id.* at ¶ 25.) Thus Plaintiffs allege at least $8,590.95 of unrecovered property damages, (*see id.* at ¶¶ 24–25), and have not been fully compensated. *See Van Orden,* 318 P.3d at 1043. Allstate's reliance on *Van Orden* is unavailing.

Nor does Allstate's reliance on *Forsman v. United Financial Casualty Company*, 966 F. Supp. 2d 1091 (D. Mont. 2013) and *Fisher ex rel. McCartney v. State Farm Mutual Automobile Insurance Co.*, 305 P.3d 861 (Mont. 2013), provide assistance, as both are distinguishable from the case at bar. In *Forsman*, the issue was whether the first-party insurer's denial of payment to its insured because the insured had already recovered from the tortfeasor was "de facto subrogation" and therefore subject to the "made whole" rule. *Forsman*, 966 F. Supp. 2d at 1100–01. *Fisher*, meanwhile, concerned limits on umbrella coverage, not subrogation. 305 P.3d 861, 864. The difference here is that Allstate subrogated, and in *Forsman* and *Fisher*, no subrogation occurred.

Finally, Allstate argues Plaintiffs fail to show Allstate's actions harmed

---

[2] This figure does not include $1,250.00 for "immediate loss of income from business" or $356.24 for "immediate loss of income from employment" because Plaintiffs do not specify whether those damages arise from their property damage or bodily injury. (*See* Doc. 34 at ¶ 24.)

them. (Doc. 38 at 23.) That argument ignores Plaintiffs' allegations that, when

Allstate subrogated, it deprived Plaintiffs of funds they could have received from

the tortfeasor's insurance for unrecovered damages like the deductible, loss of use,

rental expense, and diminution. Simply put, Plaintiffs sufficiently allege they

"ha[ve] sustained a loss in excess of the reimbursement by the insurer," and are

therefore "entitled to be made whole for [their] entire loss and any costs of

recovery, including attorney's fees, before the insurer can assert its right of legal

subrogation against the insured or the tort-feasor." *Van Orden*, 318 P.3d at 1045

(citing *Skauge*, 565 P.2d at 632). Plaintiffs' allegations "plausibly suggest" they

are entitled to relief. *Harris*, 682 F.3d at 850.

## II.   Implied Covenant of Good Faith and Fair Dealing (Count Three)

Allstate contends Montana's Unfair Trade Practices Act, specifically

Montana Code Annotated § 33-18-242(3), precludes a tort claim for violation of

the implied covenant of good faith and fair dealing, and that, "[t]o the extent

[P]laintiffs' claim . . . is still premised on tort . . . it should be dismissed." (Doc.

38 at 25-26.) Plaintiffs respond Count Three is based in contract and "[t]ort relief

for breach of the implied covenants is not alleged nor intended in this case." (Doc.

39 at 21.)

Section 33-18-242(3) provides, *inter alia*, that "[a]n insured who has

suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under any other theory or cause of action." In turn, "every contract, regardless of type, contains an implied covenant of good faith and fair dealing. A breach of the covenant is a breach of the contract." *Story v. City of Bozeman*, 791 P.2d 767, 775–76 (Mont. 1990). Accordingly, Allstate's motion to dismiss as it relates to Count Three is denied because the Plaintiffs' claim sounds in contract, not tort.

### III. Constructive Fraud (Count Four)

Allstate asserts that Plaintiffs' fail to plead constructive fraud (Count Four) with sufficient particularity. Plaintiffs respond that constructive fraud need not be pled with the same particularity as actual fraud, and, the particularity requirement notwithstanding, their "allegations tell [Allstate] the details of the claim." (Doc. 39 at 21.)

Federal Rule of Civil Procedure 9(b) requires that claims of fraud "must state with particularity the circumstances constituting fraud." "It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). "To meet this standard, Plaintiffs' complaint must

'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso, U.S. ex. rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

Montana statute defines "constructive fraud" as "any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person." Mont. Code Ann. § 28-2-406(1). "Where a party, by his words or conduct creates a false impression concerning serious impairments or other important matters and subsequently fails to disclose relevant factors, constructive fraud may be found." *Drilcon, Inc. v. Roil Energy Corp., Inc.*, 749 P.2d 1058, 1061–62 (Mont. 1988).

Plaintiffs allege three examples of constructive fraud. First, Allstate "misrepresented facts regarding its insurance policy coverage by a deceptive procedure of asserting under the guise of 'limitation on coverage' a right to recover." (Doc. 34 at ¶ 49.) Second, Allstate "concealed its subrogation recovery from its own insured with knowledge that typically insureds would not discover the wrong and hold the insurers to account for the improper subrogation." (*Id.*)

Finally, Allstate "affirmatively asserted a false proposition of law that, if its insureds' unrecovered losses fall outside of the Allstate coverage, they are not part of the losses to be considered before subrogation may be had (a misrepresentation of law that would render the made-whole rule utterly meaningless)." (*Id.*)

In other words, Plaintiffs have alleged Allstate pursued subrogation by means of misrepresentations and non-disclsoures, giving them the false impression that they had no further right to compensation. These allegations—which detail the exact action and inaction Plaintiffs contend constitute constructive fraud—give Allstate sufficient notice of the "who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading" and "why it is false." *See Salameh*, 726 F.3d at 1133. Allstate's motion to dismiss Count Four is denied.

## IV. Civil Conspiracy (Count Seven) and Aiding and Abetting (Count Eight)

Allstate argues Plaintiffs' claims of civil conspiracy (Count Seven) and aiding and abetting (Count Eight) fail with the Plaintiffs' underlying tort claims. (Doc. 38 at 29-30.) While Allstate does not identify the specific torts at issue, Count Two (Statutory Insurance Bad Faith), Count Four (Constructive Fraud), and Count Six (Conversion) all appear to qualify.

"To sustain a civil conspiracy action, a plaintiff must allege a tort committed

by one of the alleged conspirators." *Hughes v. Pullman*, 36 P.3d 339, 343–44

(Mont. 2001) (citing *Duffy v. Butte Teacher's Union*, 541 P.2d 1199, 1202 (Mont.

1975)). When the underlying tort has been dismissed and "there is no underlying

tort action forming a basis for civil conspiracy," the civil conspiracy claim must be

dismissed. *Id.* at 344. Plaintiffs agree Counts Seven and Eight would fail in the

event no tort claims survive. (Doc. 39 at 24–25.) However, as discussed above,

Count Four survives Allstate's challenge because it is pled with sufficient

particularity. *See* Fed. R. Civ. P. 9(b). And Allstate has not specifically

challenged Counts Two or Six, which, in any event, survive Allstate's broader

attack that Plaintiffs have failed to allege a cognizable subrogation claim.

Accordingly, Allstate's motion to dismiss Counts Seven and Eight is denied.

## V.     Breach of Contract (Count One)

Allstate finally argues that Plaintiffs' breach of contract claim (Count One)

should be dismissed because it "fail[s] to identify any contractual provision

[Allstate] supposedly breached," (Doc. 38 at 30), and because Plaintiffs "never

made a demand for [] coverage," (*Id.* at 32). Plaintiffs insist they identified the

portion of the policy at issue, and that the suit itself is their claim for coverage.

(Doc. 39 at 25.) Plaintiffs are correct.

"A party may not recover damages for breach of contract unless the party

proves that the breach of contract proximately caused the damages, or that the damages likely resulted from the breach of contract." *Tin Cup Cty. Water and/or Sewer Dist. v. Garden City Plumbing & Heating, Inc.*, 200 P.3d 60, 68 (Mont. 2008). Count One states that "Konecky had underinsured coverage with Allstate," that the Tolson's "coverage limits are inadequate to cover the Konecky's bodily injury damages and have been exhausted by AAA payment of policy limits for Bodily Injury of $25,000," and that "Allstate has made no payment and no offer of payment under the underinsured coverage of its policy." (Doc. 34 at ¶¶ 35-36.) This "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), plausibly shows Allstate breached the insurance contract by failing to provide underinsured coverage.

Allstate relies on *Williamson v. Montana Public Service Commission* for the proposition that a breach of contract claim is deficient where a plaintiff fails to identify the contractual provision that was breached. 272 P.3d 71, 85 (Mont. 2012). In *Williamson*, however, the plaintiffs were not parties to the contracts at issue. *Id.* at 79. Instead, they sought standing before the Montana Public Service Commission as third-party beneficiaries to street lighting contracts between NorthWestern Energy and various Montana cities. *Id.* The Montana Supreme Court held that the plaintiffs lacked standing because Montana statute did not

"authoriz[e] them to bring an action for breach of contract in the [Public Service Commission]," the plaintiffs were not intended third-party beneficiaries of the contracts, and the plaintiffs failed to identify the specific contractual provisions they wished to enforce. *Id.* at 85. Here, however, the Plaintiffs are parties to the insurance contract, and they have identified the contractual provision they wish to enforce. Allstate's motion to dismiss Count One is denied.

### CONCLUSION

Plaintiffs' allegations meet the pleading standard required by Rule 8(a) and, where necessary, Rule 9(b). Accordingly, IT IS ORDERED that Allstate's motion to dismiss (Doc. 37) is DENIED.

DATED this **29** day of December, 2017.

Donald W. Molloy, District Judge
United States District Court